**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



DR. RICHARD JOHNSON,

                         Plaintiff,

   -against-

VERTOS MEDICAL, INC., JAMES M.
CORBETT, DR. ANDREW FIRLIK, DR.
MYLES GREENBERG, DANIEL PELAK,
JOHN F. RYAN,

                       Defendants.

**NOTICE OF REMOVAL**

Case No. _____

**13 CV  6431**

JUDGE BRICCETTI

Pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, and Southern District of New York

Local Civil Rule 81.1, specially-appearing defendants Vertos Medical, Inc., James M. Corbett,

Dr. Andrew Firlik, Dr. Myles Greenberg, Daniel Pelak, and John F. Ryan (collectively,

"Defendants") hereby file this Notice of Removal, removing to the United States District Court

for the Southern District of New York the case brought by plaintiff Dr. Richard Johnson

("Plaintiff") in the Supreme Court of the State of New York, County of Westchester, Index. No.

60742/2013. In support of their notice and grounds for removal, Defendants state as follows:

      1.      On or about July 18, 2013, Plaintiff commenced an action in the Supreme Court

of the State of New York entitled *Dr. Richard Johnson v. Vertos Medical, Inc., et al.*, Index No.

60742/2013. Pursuant to 28 U.S.C. § 1446(a), attached hereto as Exhibit A are copies of the

Summons and Complaint.

      2.      This Notice of Removal is timely because it is filed within thirty (30) days after

the earliest service of the Summons and Complaint. *See* 28 U.S.C. § 1446(b). Further, each

defendant joins in this Notice of Removal.

3.      The Supreme Court of the State of New York, County of Westchester, is located within the district of the United States District Court for the Southern District of New York.

4.      The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because citizenship of the parties is completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest or costs.

5.      According to the Complaint, Plaintiff is an individual residing in Briarcliff Manor, New York. *See* Compl. ¶ 1.  Upon information and belief, Plaintiff is domiciled in and thus a citizen of the State of New York. *See Gutierrez v. Home Depot U.S.A., Inc.*, 03-CIV-3709 (LAK), 2003 U.S. Dist. LEXIS 21235, at *1 (S.D.N.Y. Nov. 26, 2003) (finding allegation of residence in summons plainly sufficient for removal where removing defendant alleged on information and belief that plaintiff was a citizen of New York); *Aleph Towers, LLC v. Ambit Texas, LLC*, Case No. 12-CV-3488, 2013 U.S. Dist. LEXIS 120284, at *10-11 (S.D.N.Y. Aug. 23, 2013) (finding information and belief allegations sufficient to establish citizenship for diversity where citizenship not disputed).  On information and belief, Plaintiff is registered to vote in New York, owns property in New York, has vehicles registered in New York, and is affiliated with several businesses in New York.  On information and belief, Plaintiff is not a citizen of any state other than New York for purposes of 28 U.S.C. § 1332.

6.      Defendant Vertos Medical, Inc. is a Delaware Corporation with its principal place of business in Aliso Viejo, California.  Thus, Defendant Vertos Medical, Inc. is a citizen of Delaware and California.  Vertos Medical, Inc. was personally served with the Summons and Complaint in California on August 14, 2013.

7.      Defendant James M. Corbett resides in San Juan Capistrano, California, and he is domiciled in and thus a citizen of the State of California.  Mr. Corbett was personally served with the Summons and Complaint in California on August 13, 2013.

8.      Defendant Dr. Andrew Firlik resides in Rowayton, Connecticut, and he is domiciled in and thus a citizen of the State of Connecticut.  Dr. Firlik was personally served with the Summons and Complaint in Connecticut on August 13, 2013

9.      Defendant Dr. Myles Greenberg resides in Stamford, Connecticut, and he is domiciled in and thus a citizen of the State of Connecticut.  Dr. Greenberg was personally served with the Summons and Complaint in Connecticut on August 13, 2013.

10.     Defendant Daniel Pelak resides in Raleigh, North Carolina, and he is domiciled in and thus a citizen of the State of North Carolina.  Mr. Pelak was personally served with the Summons and Complaint in North Carolina on August 14, 2013.

11.     Defendant John F. Ryan resides in Burlingame, California, and he is domiciled in and thus a citizen of the State of California.  Mr. Ryan was personally served with the Summons and Complaint in California on August 16, 2013.

12.     Plaintiff's Complaint alleges that the Defendants breached their duties of loyalty and care to Plaintiff in, amongst other things, diluting Plaintiff's shares in Vertos Medical, Inc. Plaintiff claims that he has suffered damages in an amount not less than $1,200,000, exclusive of interest and costs. *See* Compl. ¶ 38. Thus, the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because no Defendant is a citizen of New York.

14.     A Notice of Filing of Notice of Removal will be filed simultaneously in the Supreme Court of the State of New York, County of Westchester, with copies served on counsel of record pursuant to 28 U.S.C. §§ 1446(a) and (d).

15.     Defendants hereby appear solely for the purpose of removal and for no other purpose.  By filing this Notice of Removal, Defendants do not waive any defenses, including, but not limited to, all defenses specified in Rule 12 of the Federal Rules of Civil Procedure.

16.     Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendants hereby give notice that the above-referenced action now pending against them in the Superior Court of Westchester County, New York has been removed therefrom to this Court.

Dated: September 12, 2013                 Respectfully Submitted,


                                          YANKWITT LLP


                                          _____
                                          Russell M. Yankwitt
                                          140 Grand Street
                                          White Plains, NY 10601
                                          Phone:  (914) 368-7410
                                          Facsimile:  (914) 801-5930
                                          *Attorneys for Defendants Vertos Medical, Inc.,*
                                          *James M. Corbett, Dr. Andrew Firlik, Dr. Myles*
                                          *Greenberg, Daniel Pelak, and John F. Ryan*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of September, 2013, I caused to be served a true copy of the foregoing by First class Mail upon:

> Antonette Ruocco, Esq.
> Lynn E. Judell, Esq.
> 1 North Broadway
> White Plains, NY 10605
> Phone:  (914) 946-1888
> Facsimile:  (914) 946-1822
> *Attorneys for Plaintiffs*

Russell M. Yankwitt

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

DR. RICHARD JOHNSON,

                    Plaintiff,

      -against-

VERTOS MEDICAL, INC., JAMES M.
CORBETT, DR. ANDREW FIRLIK,
DR. MYLES GREENBERG, DANIEL PELAK,
JOHN F. RYAN,

                    Defendants.

---

Index No. 60742/2013

**SUMMONS**

Venue is based on
CPLR § 503

**To the above-named Defendants:**

    YOU ARE HEREBY SUMMONED to Answer the Complaint in this action and to serve a copy of your Answer on Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after service is complete if this Summons in not personally delivered to you within the State of New York). In case of your failure to appear, or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:  White Plains, New York
        July 18, 2013

A TRUE COPY
ATTEST

PROCESS SERVER
ERIC RUBIN

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------- x

DR. RICHARD JOHNSON,                   :

                          Plaintiff,    :

     -against-                         :

VERTOS MEDICAL, INC., JAMES M. CORBETT,   :
DR. ANDREW FIRLIK, DR. MYLES
GREENBERG, DANIEL PELAK, JOHN F. RYAN,    :

                 Defendants.   :

-------------------------------------- x

Index No. *60742/2013*

**COMPLAINT**

Plaintiff, Dr. Richard Johnson ("Johnson"), for his Complaint against Vertos Medical, Inc. ("Vertos" or "the Company") and James M. Corbett ("Corbett"), Dr. Andrew Firlick ("Firlik"), Dr. Myles Greenberg ("Greenberg"), Daniel Pelak ("Pelak"), John F. Ryan ("Ryan") (collectively "the Board of Directors" or "Management"), alleges as follows:

## THE PARTIES

1. Plaintiff, Johnson, is an individual who resides in Briarcliff Manor, New York. Johnson was at one time the CEO of Vertos.

2. Vertos is a Delaware corporation with its principal place of business in Aliso Viejo, California.

3. Upon information and belief, Defendant Corbett is an individual who resides in San Juan Capistrano, California.

1

4. Upon information and belief, Defendant Firlick is an individual who resides in Rowayton, Connecticut.

5. Upon information and belief, Defendant Greenberg is an individual who resides in Stamford, Connecticut.

6. Upon information and belief, Defendant Pelak is an individual who resides in Raleigh, North Carolina.

7. Upon information and belief, Defendant Ryan is an individual who resides in Burlingame, California.

## FACTS

8. Vertos was founded in 2008. It is a medical device company that develops minimal invasive treatments for lumbar spinal stenosis.

9. Corbett joined Vertos in 2008 and has been at all relevant times its President, Chief Executive Officer and a member of the Board of Directors.

10. Firlick, Greenberg, Pelak, and Ryan are also on the Company's Board of Directors.

11. Plaintiff became a minority shareholder on or about October 1, 2008. At that time, Plaintiff was also Vertos' CEO.

12. Plaintiff's investment in Vertos was approximately $100,000.00 in cash, plus $150,000.00 in expense advancements, plus an additional $275,000.00 as

2

compensation to be issued as Preferred Stock. His ownership interest was approximately 3% of the Company (3% also includes incentive compensation in the form of Common Stock).

13. As stated above, Plaintiff was to receive compensation of $275,000.00 in Preferred Stock as Vertos' CEO. Plaintiff received a W2 tax form consistent with this promised compensation, triggering federal and state income taxes.

14. Since Plaintiffs' investment in 2008, Management has repeatedly diluted Plaintiff's interest. For example, approximately six months ago, in December of 2012, in order to bring in a new investor, Management converted each share of Preferred Stock into .20 of Common Stock in connection with a $2.275 million convertible debt financing ("the December 2012 Dilution").

15. In seeking to convince shareholders to put more money into the Company to protect their interest in the Company, Management knowingly withheld material and key information from the shareholders—such as information that the medicare approval it was trying to obtain for the Vertos' product had been denied and that Vertos had filed a lawsuit seeking to obtain approval.

16. Adding insult to injury, Management used the revenue generated from the December 2012 Dilution for their own benefit at the expense of minority shareholders. Indeed, while the Company obtained over $2 million in that financing, the Company did nothing but increase expenditures as shown on current financial statements.

3

17. Then, less than six months later, and without first looking for additional investors or genuinely exploring a sale of the Company, Management instead chose to proceed with a financing deal that would virtually eliminate the minority shareholders' interest in the Company.  To elaborate, by letter dated June 3, 2013 ("the June 3, 2013 Letter", a copy of which is attached hereto as Exhibit A), the Company proposed issuing and selling shares of the Company's Series E Preferred Stock—an action that would dilute Plaintiff's remaining interest by 80% ("the June 2013 dilution") (See schedule attached hereto as Exhibit B which shows dilution effect on Johnson's interest in the Company and also shows that the Company issued him common shares rather than preferred shares).

18. The impact of these dilutions on the Company's board of directors is always negligible as they receive additional shares and "incentive pools", all at the expense of the minority shareholders.  The Plaintiffs learned this from past and current employees and in a recent teleconference/shareholder meeting called by the Company on June 10, 2013 to discuss the June 3, 2013 letter.    During that teleconference, Corbett stated that current management would *"again"* have an *"equity incentive pool"* but that details were deferred until the closing, which Corbett said would take place on Tuesday, June 18, 2013.

19. Therefore, it is no surprise that a completely self-interested Board of Directors such as this (without even a single independent and disinterested member)

4

would vote in favor of these transactions despite the grossly unequal impact to the shareholders generally.

20. Moreover, during the June 10, 2013 teleconference, Corbett painted a dire picture of the company stating, in sum and substance, that the Medicare approval might not be forthcoming.  Corbett failed to explain to the minority shareholders how a complaint in such "dire" circumstances was able to secure a new investment of approximately $23 million.  (*See* Press Release attached hereto as Exhibit C).  Clearly, once again, Corbett was not providing the minority shareholders with the full picture.

21. In reality, the June 2013 Dilution was nothing more than a scam set up by Management, to bring in investors of their own choosing into the Company for their own self-interest (and the interest of their new investors) all at the expense of the minority shareholders whose interest in the Company would be diluted to virtually non-existent.

22. The June 2013 Dilution also destroyed the minority shareholders' right of redemption under the bylaws.  Specifically, Section 4.4 of the Eight Amended and Restated Certificate of Incorporation provides that "the holders of at least a majority of the then outstanding shares of Preferred Stock shall be entitled to require the Corporation to redeem all of the outstanding shares of Preferred Stock then outstanding at any time after October 15, 2015."  By diluting the shareholders' interests to negligible amounts, management essentially eliminated this protection.

5

23. It also warrants emphasis that Management intentionally failed to disclose all of the pertinent information regarding the June 2013 Dilution in a timely fashion, thereby preventing minority investors, such as Plaintiffs, to unite, and ultimately bring a derivative action.

24. Knowing full well that it was acting in bad faith and strictly for its own interest, the Board of Directors went to great lengths to get the June 2013 Dilution completed and closed before any shareholder had time to take remedial action. Indeed, Management purposely and deceptively moved up the closing date to Monday, June 17, 2013 when, in accordance with statutory notice requirements, Plaintiffs' counsel advised Corbett that Plaintiffs would be moving by order to show cause for a temporary restraining order enjoining Defendants from proceeding with the June 2013 Dilution. (A copy of the relevant e-mails are attached hereto as Exhibit D).

25. Management's self-dealing and mishandling of the Company and the Company's funds is further highlighted by the 2012 financials which show a loss of $9.8 million dollars on $10.7 million dollars in revenue; and the trend for 2013 has continued—revenues are $4.5 million, with losses of $3.4 million as of May 2013.

26. While Defendants will claim they have sought to reduce expenditures, in reality their actions have been outright reckless as they have consistently used Company resources indiscriminately and as a personal piggybank, some examples:

6

a. Per Company books, the Company unnecessarily paid for 3 separate facilities for 2009-2010: Aliso Viejo for Jim Corbett's office, San Jose for research and development, and Huntington Beach which was closed within a year. For 2010-2011 there were again 3 facilities, one of which was a new larger office for Corbett on which the Company saw fit to spend almost $60k for a custom build.

b. Jim Corbett misused Company funds by flying first class, taking extra hotel nights for personal use, using Company funds to fly to Arizona to visit his daughter.

c. The Company held monthly manager meetings at expensive restaurants.

d. Excessive funding for physician training; flights, expensive meals for the physicians and the sales representatives.

e. Despite an in-house marketing team, Corbett hired his friends to "review" the marketing work.

f. Corbett also hired relatives, knowing full well that they would not be contributing in any way to the Company.

g. The Company funded Corbett's personal CEO club membership.

h. Company funds were used to hire Corbett's relatives and friends, including a management coach--- at least six people were coached at a cost of $20k each.

i.  The inconsistent staff policies and layoffs/firings lead to multiple excessive severance packages to quash lawsuits and buyback shares indiscriminately issued.

27. As evidenced by the foregoing facts, the December 2012 Dilution and the June 2013 Dilution are demonstrative of Management's reckless breach of the duty of care and duty of loyalty owed to the Company's minority shareholders.

28. As a result of Management's reckless breach of the duty of care and duty of loyalty owed to them, Plaintiff have all sustained monetary damages.

29. In addition, during the June 2013 Dilution process, Plaintiff discovered that the $275,000.00 compensation paid to him for his time as CEO, was paid to him in common stock rather than in preferred stock as he had been promised—adding approximately $275,000.00 to the amount of damages sustained by him.

## CLAIMS

### (Breach of Common Law and Statutory Duties of Loyalty)

30. Plaintiff repeats and realleges paragraphs 1 through 29 above, as though fully set forth and incorporated herein.

31. Defendants owed a fiduciary and statutory duty of loyalty to Plaintiff.

8

32. Defendants knowingly, through their acts and omissions, acted against Plaintiff's interest in connection with both the December 2012 Dilution and June 2013 Dilution.

33. Plaintiff was irreparably harmed by Defendants' self-dealing and wrongful acts and omissions.

34. Moreover, Defendant Corbett's conduct was willful, oppressive, reckless, and malicious, therefore entitling Plaintiff to recover punitive and exemplary damages in an amount to deter such future wrongful behavior.

### (Breach of Officers' Duty of Care)

35. Plaintiff repeats and realleges paragraphs 1 through 34 above, as though fully set forth and incorporated herein.

36. As Vertos' President, Chief Executive Officer, and member of Vertos' board of directors, Corbett owed a duty of care to Vertos and the minority shareholders.

37. Corbett, and the other individual Defendants, breached their duty of care by their reckless and gross negligence as described above.

38. As a result of this breach, Plaintiff has sustained damages in an amount to be determined at trial, but not less than $1,200,000.00.

9

WHEREFORE, Plaintiff demands judgment as follows:

(a) compensatory damages against Defendants in an amount to be determined at trial but not less than $1,200.000.00, plus interest and costs;  (b) punitive and exemplary damages against Defendant,  Corbett; (c) such other and further relief as this Court deems just and proper.

Shechtman Halperin Savage LLP

Dated: White Plains, New York
          July 18, 2013

By: _Antonette Ruocco_
          Antonette Ruocco, Esq.
          Lynn E. Judell, Esq.
          1 North Broadway
          White Plains, NY 10605
          (914)946-1888
          (914)946-1822 (facsimile)

10

# EXHIBIT A

Vertos Medical, Inc.
101 Enterprise, Suite 100
Aliso Viejo, CA  92656
Telephone:  (949) 349-0080
Facsimile:  (949) 349-0218

June 3, 2013

Richard Johnson
63 Cottonwood Lane
Briarcliff Manor, NY 10510

Re:      *Participation Offer for Vertos Medical, Inc. Series E Preferred Stock Financing*

Dear Preferred Stockholder:

Vertos Medical, Inc., a Delaware corporation (the "**Company**"), intends to issue and sell up to 10,075,000 shares of the Company's Series E Preferred Stock (the "**Series E Preferred**") at a purchase price of $1.291 per share for a total equity investment of approximately $13,000,000, in June 2013 (the "**Series E Financing**").  The Series E per share purchase price is below that of the all other series of the Company's Preferred Stock issued in the Company's previous equity financings. The prospective participants in the Series E Financing include, among others, investment entities affiliated with Pitango Venture Partners, a new investor in the Company leading the Series E Financing, and current stockholders of the Company, ONSET VI, L.P., CHL Medical Partners, Foundation Medical Partners, DFJ Mercury Venture Partners and Aweida Venture Partners.

In connection with, and immediately prior to the closing of, the Series E Financing, the Company will effect a 100 for 1 reverse split of all outstanding Common Stock and Preferred Stock (the "**Reverse Split**").  Pursuant to the Reverse Split, (i) every 100 shares of Common Stock issued and outstanding will be converted into 1 share of Common Stock, (ii) every 100 shares of Series A Preferred Stock issued and outstanding will be converted into 1 share of Series A Preferred Stock, (iii) every 100 shares of Series B Preferred Stock issued and outstanding will be converted into 1 share of Series B Preferred Stock, (iv) every 100 shares of Series C Preferred Stock issued and outstanding will be converted into 1 share of Series C Preferred Stock, (v) every 100 shares of Series D Preferred Stock issued and outstanding will be converted into 1 share of Series D Preferred Stock, and (vi) every 100 shares of Series D-1 Preferred Stock issued and outstanding will be converted into 1 share of Series D-1 Preferred Stock.  Fractional shares of post-split Common Stock and Preferred Stock will not be issued as a result of the Reverse Split, but, in lieu of such fractional shares, the stockholders that otherwise would have been entitled to receive a fractional shares as a result of the Reverse Split will receive an amount in cash determined based upon such holder's fraction of a share. The share numbers and purchase price for the Series E Financing set forth in this letter take into account the effect of the Reverse Split.

Contemporaneous with the closing of the Series E Financing, the Company will also be issuing approximately 5,356,929 shares of the Company's Series E-1 Preferred Stock and 3,846,826 shares of the Company's Series E-2 Preferred Stock upon the conversion of currently outstanding convertible bridge debt in the approximate amount of $9,750,000.

DOCSOC/1365951v1/101281-0014

June 3, 2013
Page 2

The Company would like to extend an offer to its existing holders of Preferred Stock (the "Preferred Stockholders") to participate in the Series E Financing in order to give such Preferred Stockholders the opportunity to reduce the dilutive impact of the Series E Financing on such Preferred Stockholders' respective holdings of the Company's capital stock. After the satisfaction of certain contractual participation rights held by certain stockholders of the Company, the Company is able to offer an aggregate of 283,736 shares of the Company's Series E Preferred Stock (the "Offered Shares") to the Preferred Stockholders. Accordingly, each Preferred Stockholder is hereby offered the opportunity to participate in the Series E Financing up to the full amount of such Preferred Stockholder's "Pro Rata Share" of the Offered Shares (calculated based upon the number of shares of Preferred Stock (on an as-converted to Common Stock basis) held by such Preferred Stockholder divided by the total number of shares of Preferred Stock (on an as-converted to Common Stock basis) held by all Preferred Stockholders).

Please note that your pro rata amount ("Pro Rata Share") of the Series E Financing is $35,712.57. If you are interested in investing more than your pro rata amount, following the receipt of responses from all Preferred Stockholders, the Company will inform you as to whether or not there are any remaining shares available for purchase. Any such excess will be allocated among the Preferred Stockholders that have requested to invest an amount in excess of their pro rata share of the Series E Financing, based upon each such Preferred Stockholder's pro rata ownership of Preferred Stock, calculated on an as-converted to Common Stock basis.

Please indicate if you intend to accept your participation offer of the Series E Preferred Stock pursuant to the Series E Financing up to your Pro Rata Share, and any amount in excess of the Pro Rata Share you wish to invest in the Series E Financing. To evidence your intent, please (i) complete and sign the exercise notice, (ii) keep a copy of the exercise notice for your records, (iii) send a copy of the exercise notice to Jeff Estes via e-mail (jestes@sycr.com) or fax (949-823-5054) within ten (10) days following the date of this notice, and (iv) send the executed original exercise notice to Jeff Estes, Stradling Yocca Carlson & Rauth, 660 Newport Center Drive, Suite 1600, Newport Beach, CA 92660.

Again, please respond within ten (10) days following the date of this notice. <u>If the Company has not received your exercise notice within ten (10) days following the date of this notice, you will be deemed to have elected not to participate in the Series E Financing</u>. Thank you in advance for your prompt response.

Best regards,

/s/James Corbett
James Corbett
President and Chief Executive Officer

**VERTOS MEDICAL, INC.**
**NOTICE OF EXERCISE OF PARTICIPATION OFFER**

The undersigned hereby:

Check one box:

☐        Declines to participate in the offering of the Series E Preferred Stock as
         described above.

☐        Elects to purchase _____ shares of the Series E Preferred at the
         purchase price of $1.291 per share for the aggregate purchase price of
         $_____.

Signature:      _____
Print Name:     _____
Title:          _____
Date:           _____

# EXHIBIT B

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| current | 1,003,252 | 343,775 | 343,775 | 107,197 | 107,197 | 374,317 | 420,386 | | | 1,874,610 | 1.85% |
| post Series E & reverse split | 10,032 | 3,437 | 22,087 | 1,071 | 6,882 | 3,743 | 48,292 | 17,011 | 104,304 | 0.34% |
| including Series E participation | 10,032 | 3,457 | 22,087 | 1,071 | 6,882 | 3,743 | 48,292 | 17,011 | 27,662 | 131,966 | 0.43% |

# EXHIBIT C

Vertos Medical Raises $23 Million in Series E Financing -- ALISO VIEJO, Calif., June 1... Page 1 of 2



**PR Newswire**
*A UBM company*

Send a release

Become a member  Member sign in
For journalists  For bloggers
Global sites

Search          Advanced Search
◯ Products & Services  ◯ News Releases

Products & Services          Knowledge Center          Browse News Releases          Contact PR Newswire

See more news releases in Banking & Financial Services | Health Care & Hospitals | Medical Pharmaceuticals | Clinical Trials & Medical Discoveries

## Vertos Medical Raises $23 Million in Series E Financing
Proceeds to Fund U.S. Commercial Expansion and European Launch

ALISO VIEJO, Calif., June 19, 2013 /PRNewswire-USNewswire/ -- Vertos Medical Inc., which has pioneered the *mild* procedure -- a safe, outpatient procedure that can help patients diagnosed with lumbar spinal stenosis (LSS) stand longer and walk farther with less pain[1] -- announced today that it has closed nearly $23 million in financing. The proceeds will be used to fund U.S. commercial expansion and the launch of *mild* in European markets.

The financing was led by Pitango Venture Capital and joined by existing investors including ONSET Ventures, CHL Medical Partners, Foundation Medical Partners, Mercury Fund and Aweida Venture Partners.

"We are pleased to partner with Pitango, an experienced investor with global presence, and we are fortunate to have the ongoing commitment and confidence of our existing investors," said James Corbett, Vertos' president and chief executive officer.

The recent financing will support continued growth in the adoption of *mild*, a minimally invasive procedure which has a reported positive-response rate of 81 percent.[2] Performed through an incision the size of a baby aspirin, *mild* has been proven safe, effective and durable in 11 clinical studies and more than 16 published peer-reviewed journal articles. Since the proprietary device kit received 510(k) clearance from the Food and Drug Administration in 2008, more than 15,000 people have been treated with *mild* in the U.S.

"We have an extraordinary opportunity to address a frequent and often debilitating condition with a low-cost, efficacious outpatient procedure. We intend to build on current momentum and continue our efforts to provide *mild* as a new treatment option for LSS patients and establish it as a standard of care," Corbett said.

Itzk Harel, General Partner at Pitango Venture Capital, who has joined the company's board, said: "Vertos Medical presents a compelling investment opportunity. We are enthusiastic about the novel *mild* procedure and are especially impressed by the team's progress and achievements to date."

LSS is primarily a degenerative, age-related narrowing of the lower spinal canal that causes pressure on the nerves, leading to pain and reduced mobility. It is a common condition, with more than 1.2 million Americans diagnosed and in active treatment each year.[3] Onset generally occurs after age 50 and nearly 5% of the U.S. is affected by this condition.[4] These statistics present a large and growing demand for innovative, low-cost procedures like *mild*. Currently, patients have a variety of treatment options ranging from physical therapy to open back surgery. The *mild* procedure is unique because it provides durable relief with low risk of complications and does not require general anesthesia, stitches or extensive recovery time.[5]

**About *mild***

*mild* is a safe procedure that can help patients diagnosed with LSS stand longer and walk farther with less pain. It is a short, outpatient procedure performed through an incision the size of a baby aspirin that requires no general anesthesia, no implants and no stitches. Its efficacy and safety have been demonstrated in 11 clinical trials and more than 16 published peer-reviewed clinical journal articles. For more information, visit www.mildprocedure.com.

**About Vertos Medical Inc.**

Vertos Medical is a leader in the treatment of patients suffering with lumbar spinal stenosis (LSS), a degenerative, age-related narrowing of the lower spinal canal. Its proprietary technologies include *mild*, which offers an outpatient, minimally invasive, fluoroscopically guided therapeutic treatment of LSS. For more information, visit www.Vertosmed.com.

This press release is neither an offer to buy nor an offer to sell the Company's securities. The issuance of the Preferred Stock by Vertos Medical Inc. was in an exempt private offering and the securities were not registered with the Securities Exchange Commission. The offering has been completed.

[1] Mekhail, Nagy, et al. (2012). Functional and Patient-Reported Outcomes in Symptomatic Lumbar Spinal Stenosis Following Percutaneous Decompression. *Pain Practice*, 12(6): 417–423. doi: 10.1111/j 1533-2500.2012.00565 x.

[2] Levy, R., et al. (2012). Systematic safety review and meta-analysis of procedural experience using percutaneous access to treat symptomatic lumbar spinal stenosis. *Pain Medicine* 13(12), 1554-1561. doi: 10.1111/j 1526-4637.2012 01504.

[3] Longitudinal Medicare Database, Quorum Consulting.

[4] Deer, Timothy. (2012). Minimally Invasive Lumbar Decompression for the Treatment of Spinal Stenosis of the Lumbar Spine. *Pain Management*, 2(5): 457-465. ISSN 1758-1869.

[5] No dural tears, nerve root damage or blood loss requiring transfusion reported in any clinical trials.

SOURCE Vertos Medical Inc.

RELATED LINKS
http://www.mildprocedure.com/
http://www.vertosmed.com/

Next in Banking & Financial Services News

### More by this Source

New Study Data Demonstrate Effectiveness of Back Treatment *mild* Over Two Year Period
Mar 04, 2013, 13:33 ET

View All News by this Source

### Featured Video



### Journalists and Bloggers



Visit PR Newswire for Journalists for releases, photos, ProfNet experts, and customized feeds just for Media.

View and download archived video content distributed by MultiVu on The Digital Center.

**Custom Packages**

Browse our custom packages or build your own to meet your unique communications needs.

Start today.

**PR Newswire Membership**

Fill out a PR Newswire membership form or contact us at (888) 776-0942.

**Learn about PR Newswire services**

Request more information about PR Newswire products and services or call us at (888) 776-0942.

# EXHIBIT D

> ⓘ To help protect your privacy, links to images, sounds, or other external content in this message have been blocked. Click here to unblock content.

| From: | Adam Chodos [mail@adamchodos.com] | Sent: | Mon 6/17/2013 4:03 PM |
|---|---|---|---|
| To: | Jim Corbett | | |
| Cc: | Rebecca Colbert; Feuchter, Bruce W.; Estes, Jeffrey A.; Lara Michalek; Richard Johnson; Antonette Ruocco | | |
| Subject: | Re: FW: Adam Chodos e-mail | | |
| Attachments: | | | |

Well Jim,

I think it is obvious that you have just compounded the problem and trying to ramrod the deal to short circuit the TRO.  We will seek personal liability against management.

Sincerely,

Adam Chodos

> p: 203.629.9074  f: 203.930.2236
> mail@adamchodos.com
> adamchodos.com

*Notice: This message and its attachments are confidential and protected by the attorney-client privilege. If you are not the named addressee or intended recipient or if you received this message in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Please notify the sender immediately by e-mail and delete and destroy this message and its attachments. Any statements regarding federal, state or other tax law contained herein is not intended and cannot be used to avoid penalties that may be imposed by any taxing authority; is not to be construed as tax advice until and unless we are retained as tax counsel; and cannot be used to market any entity, investment plan or arrangement.*

On Mon, Jun 17, 2013 at 3:24 PM, Jim Corbett <jcorbett@vertosmed.com> wrote:

> Dear Mr. Chodos, in order to save you the trouble and expense, I inform you that this transaction has already closed, and funds have been received.
>
> Sincerely,
>
> Jim
>
>
>
> **From:** Adam Chodos [mailto:mail@adamchodos.com]
> **Sent:** Monday, June 17, 2013 11:57 AM
> **To:** Jim Corbett
> **Cc:** Rebecca Colbert; Feuchter, Bruce W.; Estes, Jeffrey A.; Lara Michalek; Richard Johnson; Antonette Ruocco
>
> **Subject:** Re: FW: Adam Chodos e-mail
>
>
> Jim,

This email is a notice that the TRO action is being filed in Supreme Court, Westchester County, NY by litigation counsel so Vertos can arrange to have representation present if it so chooses.

Sincerely,

Adam Chodos

| | p: 203.629.9074   f: 203.930.2236 |
|---|---|
| **C** | mail@adamchodos.com |
| | adamchodos.com |

*Notice: This message and its attachments are confidential and protected by the attorney-client privilege. If you are not the named addressee or intended recipient or if you received this message in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Please notify the sender immediately by e-mail and delete and destroy this message and its attachments. Any statements regarding federal, state or other tax law contained herein is not intended and cannot be used to avoid penalties that may be imposed by any taxing authority; is not to be construed as tax advice until and unless we are retained as tax counsel; and cannot be used to market any entity, investment plan or arrangement.*

On Fri, Jun 14, 2013 at 8:43 PM, Adam Chodos <mail@adamchodos.com> wrote:

Jim,

I did not hear back from you.  Dr. Johnson and his investor group are very put off by the cramdown attempt and the TRO is being prepared presently for filing Monday.  It is a shame Vertos choose not to respond.

Sincerely,

Adam Chodos

| | p: 203.629.9074   f: 203.930.2236 |
|---|---|
| **C** | mail@adamchodos.com |
| | adamchodos.com |

*Notice: This message and its attachments are confidential and protected by the attorney-client privilege. If you are not the named addressee or intended recipient or if you received this message in error, you are directed not to read, disclose, reproduce, distribute, disseminate or otherwise use this transmission. Please notify the sender immediately by e-mail and delete and destroy this message and its attachments. Any statements regarding federal, state or other tax law contained herein is not intended and cannot be used to avoid penalties that may be imposed by any taxing authority; is not to be construed as tax advice until and unless we are retained as tax counsel; and cannot*